[L. A. No. 5704. In Bank.—September 16, 1921.]

FRANK C. TURNER, Respondent, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, (a Corporation), Appellant.

[1] BONDS—RELEASE OF ATTACHMENT—CONSTRUCTION OF.—The effect of a bond providing that a surety company in consideration of the release from attachment of certain property undertakes in a certain sum and promises that in case the plaintiff recovers judgment in the action the defendant will, on demand, pay to plaintiff the

amount of whatever judgment may be recovered in the action, together with interest and costs, is that the surety company guarantees the payment by the defendant on demand of any judgment recovered in said action, and, on default in such payment, to indemnify the plaintiff to the amount of the judgment, not to exceed the sum named.

[2] ID.—GUARANTORS AND SURETIES—ALTERATION OF CONTRACT—RELEASE.—It is the settled law of this state that a guarantor or surety may stand upon the strict terms of his contract, and that any unauthorized alteration of the obligation assumed, whether detrimental to the guarantor or not, releases him from liability.

[3] ID.—ACTION ON BOND—AMENDMENT OF PLEADINGS.—In an action upon such a bond, unless amendments to the complaint are such as to substitute new or different parties, or to state a new and independent cause of action, the sureties or guarantors are bound by the judgment.

[4] ID.—OBLIGATION—AMENDMENT OF PLEADINGS.—In an action upon a bond given to release an attachment, where the contract of the surety company is that the defendant will pay to plaintiff the "amount of whatever judgment may be recovered in said action," the obligation which it is sought to enforce against the principal through the suit and judgment is the payment of the liability arising under the contract set out in the complaint, and the plaintiff is not estopped by his original complaint from making any corrections or supplying any omissions by amendment which are proper or necessary to fully set forth the liability of the defendant under the contract sued upon.

[5] ID.—SURETYSHIP—DEATH OF PRINCIPAL—LIABILITY OF SURETY.—A bond given to release an attachment is not exonerated, nor the right of recovery suspended, by the death of the principal and the prosecution of the action to judgment against the administrators of his estate.

[6] ID.—JUDGMENT AGAINST ADMINISTRATORS—PAYMENT OUT OF ESTATE.—As against the administrators and the property of the estate of a deceased person, a judgment recovered is only payable from the assets of the estate in due course of administration, and such judgment is only the equivalent of an allowed and approved claim.

[7] ID.—JUDGMENT AGAINST ESTATE—EFFECT ON SURETIES.—In an action upon a bond given to release an attachment the judgment against the administrators of the estate of a deceased principal fixes the liability of the surety so far as the conclusiveness of the judgment on the original claim is concerned, and the plaintiff is

---

3. Admissibility and effect against a surety of a judgment against his principal, note, 132 **Am. St. Rep.** 759.

under obligation to look no further than to his surety in enforcing collection.

[8] ID.—RIGHTS OF SURETY—CONSTRUCTION OF BOND.—While the rule is that a surety may rely upon the strict terms of his contract, there is no reason in law or equity why the same liberality of construction and interpretation of those terms should not be applied as in construing any other contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander, S. E. Vermilyea and S. L. Carpenter for Appellant.

Stephens & Stephens for Respondent.

Short, Lindsay & Woolley, *Amici Curiae*, for Respondent.

SLOANE, J.—This is an appeal from a judgment holding the defendant corporation liable upon a common-law bond given on release of an attachment in an action between the plaintiff and one John Howse.

This bond recited that an action was pending wherein it was claimed that there was due and owing from the defendant Howse to the plaintiff the sum of $23,401.76, and that an attachment had been issued against the property of defendant, and that the defendant was desirous of releasing said property from the attachment. It then provides that "The undersigned, Fidelity and Deposit Company of Maryland, . . . in consideration of the premises, and also in consideration of the release from said attachment of the property attached, as above mentioned, does hereby undertake in the sum of $24,000, and promises, that in case the plaintiff recovers judgment in the action, the defendant will, on demand, pay to the plaintiff the amount of whatever judgment may be recovered in said action, together with interest and costs."

[1] The effect of this bond is that the Security Company guarantees the payment by the defendant on demand of any judgment recovered in said action, and, on default in such payment, to indemnify the plaintiff to the amount of the judgment, not to exceed the sum of $24,000.

Pending the final determination of this suit, the defendant died and the action was carried on against his administrators, and judgment was obtained against them for the sum of $30,813.51 and costs, to be paid from the assets of deceased defendant's estate in the due course of administration.

After this judgment became final plaintiff demanded the payment thereof from the administrators of decedent's estate, and payment being refused, this suit was brought against the Surety Company upon the bond given for release of attachment, and the judgment was obtained which is the basis of this appeal. The judgment against the Surety Company is for $24,000, the full penal sum of the bond, together with interest thereon and costs.

The principal contention of the appellant Surety Company is that it was exonerated from the penalty of its undertaking by reason of amendments to the complaint in the original action, made after the bond was executd, whereby the liability of the surety was changed.

The action as set forth in the original complaint against the defendant Howse alleged a contract between the plaintiff and said Howse relating to the subdivision and sale of a tract of land, whereby the latter had become liable to plaintiff for $14,800, for failure to pay a note and mortgage upon plaintiff's land; for $5,000 damages for failure to pave a certain street, and $3,601.76 on the release and transfer of certain lots.

This was the statement of the cause of action at the time the bond on release of attachment was made. Subsequently, plaintiff filed an amended complaint in which he alleged his claims under the same general contract, upon the note and mortgage for the same amount as in the original complaint, but set out in the second count in place of the allegation of failure of defendant to "grade or pave one street" to his damage in the sum of $5,000, that the defendant "wholly failed" to put in the street work, sidewalks, and curbs as required by the contract, to the damage of plaintiff in the sum of $7,500; and as a third count, instead of seventeen lots released at $390.62 each, in the sum of $3,601.67 and interest, as pleaded in the original complaint, he alleged twenty-three lots released at $390.62 each, in the entire sum of $5,945.48. The amended complaint also

contained an item of $458.11 for failure of defendant to pay certain taxes covered by the contract, but this was not allowed in the judgment. .

Without going into further details as to the amendment of the pleadings, it is sufficient to say that both the original and amended complaints were upon the same general contract and stated the same cause of action. The amendments did, however, serve to state a greater liability against the defendant than could have been recovered under the original complaint; and, whereas, the amount demanded under the original complaint, as recited in the bond for release of attachment, was $23,401.76, the amounts claimed under the amended complaint aggregated $27,903.59, besides interest and costs, and the judgment recovered amounted to $30,-813.51.

It appears from the recitals of the judgment that the above total was made up of $17,296.94 on the first count, $4,988.15 on the second, and $8,528.42 on the third count.

[2] It is the settled law of this state that a guarantor or surety may stand upon the strict terms of his contract, and that any unauthorized alteration of the obligation assumed, whether detrimental to the guarantor or not, releases him from liability. (*Driscoll* v. *Winters*, 122 Cal. 65, [54 Pac. 387]; *Tuohy* v. *Woods*, 122 Cal. 665, [55 Pac. 683]; *First Congregational Church* v. *Lowrey*, 175 Cal. 124, [165 Pac. 440]; *Michelin Tire Co.* v. *Bentel*, 184 Cal. 315, [193 Pac. 770].) This rule is succinctly stated in our codes. Section 2819 of the Civil Code, relating to the exoneration of guarantors, provides that "A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

The latest expression of this court on the subject recognized this application of the rule to undertakings on release of attachments, as affected by subsequent amendments of the complaint by releasing the sureties. (*Michelin Tire Co.* v. *Bentel, supra.*) In that case the undertaking of the bond was to "pay the amount of the judgment recovered in the action" in case of default by the defendant in making

such payment. In the Michelin case, however, an entirely new cause of action was set out in the amended complaint. The plaintiff had instituted suit upon a claim which at the time belonged to another related corporation, and, therefore, the plaintiff named had no cause of action at the time the undertaking on release of attachment was given. By stipulation between the plaintiff and defendants an amended complaint was filed, setting up an assignment of the claim to the plaintiff corporation, made subsequently to the release of attachment. This was equivalent to the commencement of a new action, and the judgment obtained was not in the action in which the undertaking was given. That decision is, therefore, easily distinguishable from the one before us on its facts, as here there was no change in the cause of action, and the judgment sued on was the judgment recovered in the action which was pending when the bond was given.

It is argued, however, that the reasoning of the opinion applies in this case. It is there said, quoting from *Cassidy* v. *Saline County Bank,* 7 Ind. Ter. 567, [104 S. W. 838]: "The surety upon a bond given by the defendant to dissolve an attachment takes his obligation with reference to the cause as it then stands; and should the plaintiff afterward so change his pleadings as to make virtually a new action, how can it be said that the surety would have obligated himself under the new order of things? He may have been satisfied that the plaintiff could not recover in the action and may therefore have been willing to give the defendant present relief by signing as his bondsman, though he would not have signed had the suit been well grounded."

The amendment above referred to consisted in changing the cause of action from one on open contract to one on a judgment obtained in another state upon the same contract. The force of the decision in its application to the matter before us is, however, lost by the circumstance that the appellate court there held that the amended complaint stated a new cause of action.

The opinion in *Michelin Tire Co.* v. *Bentel, supra,* further quoting from *Quillen* v. *Arnold,* 12 Nev. 244, recognizes the doctrine that while the power to allow amendments

·187 Cal.—6

"may be and is very liberally exercised, and very properly so, as between the parties to the action in furtherance of justice, it cannot be exercised with the effect of changing the rights and liabilities of third parties."

In all but one of the cases cited in the Michelin Tire Company case in support of the opinion, there was by the amendments complained of either a change of the cause of action, or a change of parties to the action. In *Price* v. *Clark,* 127 Mass. 599, there is some support to appellant's contention for exoneration, on the face of the opinion. The action in that case as originally brought was for a balance on account after allowing certain credits. The complaint was amended by omitting the credits and suing on the entire claim. This was held such a variance as to release the securities. There are other decisions cited by appellant open to the same construction.

[3] The weight of authority, however, seems to sustain the rule that unless the amendments are such as to substitute new or different parties, or to state a new and independent cause of action, the sureties or guarantors are bound by the judgment.

It is generally held that where a surety whose obligation discharges from attachment the assets of the debtor upon which the attaching creditor had a right to rely for security of his claim, such surety ought not to be exempted from liability unless the obligation with reference to which he contracted has been essentially changed without his consent. Having made himself responsible for "any judgment recovered in the action," it would be unduly limiting his agreement to permit him to plead successfully an amendment that did not alter the "nature and character" of the original claim. (*Warren Bros.* v. *Kendrick,* 113 Md. 603, [140 Am. St. Rep. 445, 77 Atl. 847]; *Russia Cement Co.* v. *Le Page,* 174 Mass. 349, [55 N. E. 70]; *Jaynes Exrs.* v. *Platt,* 47 Ohio St. 262, [21 Am. St. Rep. 810, 24 N. E. 216]; *Driscoll* v. *Holt,* 170 Mass. 262, [49 N. E. 309]; *Doran* v. *Cohen,* 147 Mass. 342, [17 N. E. 647]; *Morton* v. *Shaw,* 190 Mass. 554, [77 N. E. 633]; *Hammond* v. *Starr,* 79 Cal. 556, [21 Pac. 971].)

[4] The confusion that has arisen in this case, and in some of the authorities cited, has resulted from a failure to distinguish between the complaint and the cause of action

attempted to be stated in the complaint. The complaint filed in a suit is not the obligation, nor the basis of the obligation of the principal which the surety guarantees. The contract of the Surety Company in this action was that it would undertake that the defendant would pay to plaintiff the ''amount of whatever judgment may be recovered in said action.'' The obligation which it was sought to enforce against the principal through the suit and judgment demanded was the payment of the liability arising under the contracts set out in the original complaint. There was no alteration or modification of that contractual liability of the defendant. The plaintiff was not estopped by his original complaint from making any corrections or supplying any omissions by amendment which were proper or necessary to fully set forth the liability of the defendant under the contract sued on. The surety entered upon its contract to guarantee payment of the judgment, any judgment on the cause of action, with presumptive understanding that the original complaint might be amended to cover any damages which had occurred prior to commencement of suit from a breach of the contracts which constituted the cause of action, though omitted from the original complaint. (*Bierce* v. *Waterhouse,* 219 U. S. 320, [55 L. Ed. 237, 31 Sup. Ct. Rep. 241, see, also, Rose's U. S. Notes].)

If the liability of the release bond had been predicated upon a judgment on the precise facts pleaded in the original cause of action, then such complaint would be the measure of the liability, but the surety contracted upon the basis of whatever judgment was obtained in the action, and it will be presumed to have taken into consideration the possibility of changes by amendment in the extent and nature of the liability incident to the cause of action.

Indeed, the Surety Company here did safeguard itself from any material increase in its liability through amendments to the complaint by fixing the penalty of its bond at a sum only sufficiently greater than demanded by the prayer of the original complaint to cover prospective interest and costs.

[5] Appellant makes the further point on this appeal that the bond is exonerated, or at least the right of recovery suspended, by the death of the defendant and the prosecu-

tion of the action to judgment against the administrators of his estate.

It is true that the death of the defendant is held to operate to dissolve an attachment (*Myers* v. *Mott*, 29 Cal. 359, [89 Am. Dec. 49]; *Ham* v. *Cunningham*, 50 Cal. 365). The right to pursue the debtor's property under attachment ends with his death, the attached property falls into the estate, and the only right left the attaching creditor as against the decedent's estate is to follow it under the modes of disposition provided by the probate law. But here the remedy of the plaintiff is not concerned with the estate of the deceased debtor. He has an independent remedy created by his contract with the surety company.

That fact is also an answer to the objection that there is no judgment that is enforceable except in the due course of administration.

[6] As against the administrators and the property of the estate the judgment recovered is only payable from the assets of the estate in due course of administration. It is the law of California as affecting the administration of estates, that such judgment is only the equivalent of an allowed and approved claim. (Code Civ. Proc., sec. 1504; *Hall* v. *Cayot*, 141 Cal. 13, [74 Pac. 299]; *Estate of Heller*, 169 Cal. 77, [145 Pac. 1008]; *Haub* v. *Leggett*, 160 Cal. 491, [117 Pac. 556].)

[7] There appears to be no reason, however, for putting this limitation upon the effect of such judgment in fixing the liability of a guarantor under an original and independent contract to respond in the penal sum of its undertaking upon failure of payment on demand of any judgment in the action. The judgment against the administrators is still a judgment, qualified only by the limitation that it may be contested by the heirs upon the settlement of the account of the administrator. (Code Civ. Proc., sec. 1637; *Haub* v. *Leggett, supra.*) The judgment in this action fixes the liability of the surety so far as the conclusiveness of the judgment on the original claim is concerned, and the plaintiff is under obligation to look no further than to his surety in enforcing collection. Moreover, it is pleaded in the complaint, and found by the court, that the appellant's liability on this bond has been presented and allowed as a contingent claim against the estate, and confirmed by a decree

settling the account of the administrators in which this claim is returned as one of the liabilities of the estate. (Code Civ. Proc., sec. 1637.)

As to the survival of the right of action upon the bond for release after the death of the debtor in attachment proceedings, it is held by the supreme court of Illinois in a similar case, *Sharpe* v. *Morgan*, 144 Ill. 382, [33 N. E. 22], that after attachment released on giving of bond the action proceeds *in personam* (*Hill* v. *Harding*, 93 Ill. 77), and in event of the death of original defendant and further prosecution of the suit to judgment against his administrators, the judgment obtained is a personal judgment and neglect by administrators to pay the same is a breach of the bond. In its opinion in the above case the court says: "Appellant [the surety] voluntarily joined with the attachment debtor, and took upon himself the obligation prescribed by the statute, to pay whatever judgment might be rendered in the action. He was bound to know that upon the death of Allison [the defendant] the suit would not abate but might proceed to final judgment against his personal representative."

The undertaking in the cited case was a statutory bond, and the parties were bound by the intendments of the statute in interpreting its obligations. But the conclusion can be no different here under the implied understanding of the parties arising from the fact that they were contracting with presumptive knowledge of the law; and the surety here is presumed to have known and have in mind the fact that this suit would not abate in the event of the death of defendant but could be prosecuted against his administrators. (Code Civ. Proc., sec. 385.)

[8] In this case the Surety Company stands upon a purely technical defense, and while it is true that the rule is in its favor that it may rely upon the strict terms of its contract, there is no reason in law or equity why the same liberality of construction and interpretation of those terms should not be applied as in construing any other contract.

In the matter of the obligations of corporations organized to execute surety bonds and securities as a business there is a growing disposition in the courts to hold such sureties to their obligations unless there has been some material

departure from the conditions of the agreement. (21 R. C. L., p. 1160; Ann. Cas. 1912B, 1087.)

The judgment is affirmed.

Shaw, J., Shurtleff, J., Lennon, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.